UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ROBERT F. ROBBS, | : | 3:25-CV-74 (SVN) |
| *Plaintiff,* | : | |
| | : | |
| v. | : | |
| | : | |
| KELLIE DECAPUA, | : | |
| *Defendant.* | : | May 29, 2025 |

## INITIAL REVIEW ORDER

*Pro se* Plaintiff Robert F. Robbs, a unsentenced inmate[1] currently housed at Hartford Correctional Center, filed this action under 42 U.S.C. § 1983. In this suit, Plaintiff seeks damages and injunctive relief against Defendant Kellie DeCapua, who served as his probation officer beginning in October 2022, in both her individual and official capacities. Am. Compl., ECF No. 9. The Court construes Plaintiff as alleging Fourteenth Amendment claims based on Defendant's verbal harassment and a violation of Plaintiff's right to medical privacy, as well as a Health Insurance Portability and Accountability Act ("HIPAA") claim and a state law defamation claim. *Id*.

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Upon review, the Court must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be

---

[1] Plaintiff was admitted to Hartford Correctional Center on November 13, 2024, and is presently listed as an unsentenced inmate on the Department of Correction Inmate Locator. *See* http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=320725 (last visited May 27, 2025). The Court may take judicial notice of matters of public record on the Department of Correction's website. *See, e.g., Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *Kelley v. Quiros*, No. 3:22-CV-1425 (KAD), 2023 WL 1818545, at *2 (D. Conn. Feb. 8, 2023) (taking judicial notice of state prison website inmate locator information).

granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

The Court has thoroughly reviewed all factual allegations in the amended complaint, which is the operative pleading, and conducted an initial review pursuant to 28 U.S.C. § 1915A.[2] Based on this initial review, the Court orders as follows.

## I. FACTUAL BACKGROUND

The Court summarizes only those facts necessary to provide context for its initial review. The Court accepts the following allegations in Plaintiff's amended complaint, ECF No. 9, as true for purposes of this initial review order. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In his amended complaint, Plaintiff alleges that Defendant DeCapua served as his probation officer through the state starting in October 2022. ECF No. 9 at 2. Plaintiff alleges that, since the beginning of her supervision, Defendant has "made accusations" about Plaintiff. *Id*. at 3. For example, Plaintiff says that when he shared with Defendant that he had multiple upcoming surgeries, Defendant "scoffed" at whether these surgeries were necessary and "badgered" him about his mental and physical disabilities. *Id.* He also explains that he rocks back and forth to quell his anxiety, and Defendant laughed at him for that. *Id*.

Plaintiff further alleges that Defendant talked down to him in front of her coworkers. *Id*. He claims Defendant "broadcasted" that Plaintiff is lying about needing a wheelchair. *Id*. In one

---

[2] It is well-established that "*[p]ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants). Notwithstanding this liberal interpretation, however, a *pro se* complaint will not survive dismissal unless the factual allegations meet the plausibility standard. *See Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A complaint that includes only "'labels and conclusions,'" "'a formulaic recitation of the elements of a cause of action'" or "'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

instance, Plaintiff says that in a group session in either June or July,[3] Defendant told two clinicians—"loud enough for the whole group to hear"—that the clinicians should not be "fooled" by Plaintiff's wheelchair because Plaintiff "can walk and uses [the wheelchair] as an excuse." *Id.* Plaintiff alleges that Defendant then added, "if he doesn't show up for groups with [the] excuse of surgery, write him up, and let me know[.]" *Id.*

Plaintiff submits that Defendant made him feel uncomfortable, including during home visits when she handled his "dirty laundry." *Id.* In addition, Plaintiff alleges Defendant required him to take an "eye-detect" test despite his tinnitus in his left ear and his broken glasses. *Id.*

Plaintiff adds that Defendant had him removed from his group without good reason. *Id.* at 4. Although Plaintiff admits to having missed group sessions, he says almost all of his absences were excused for well-documented reasons. *Id.* The reasons included, for example, that Plaintiff had surgery, that he was in a homeless shelter, and that he took a sleeping pill. *Id.* He alleges that his only unexcused absence occurred when it was raining out and he could not make it to the bus stop for transport to group. *Id.*

Finally, Plaintiff alleges that after his arrest for violating the terms of his probation, he learned that Defendant "discarded Plaintiff's electric wheelchair without contacting family members" or Veterans Affairs. *Id.*

As relief, Plaintiff requests that Defendant be removed from her job as a probation officer. *Id.* at 5. He also asks the Court to order Defendant to pay him $150,000, which includes both the reimbursement of his discarded electric wheelchair and compensation for what he alleges amounted to two years of Defendant's belittling. *Id.*

---

[3] The amended complaint does not specify which year these events took place, but the Court infers they occurred in 2024.

## II.   DISCUSSION

In light of those factual allegations, the Court considers whether Plaintiff has alleged any plausible claims of constitutional violation under 42 U.S.C. § 1983.

### A.  Verbal Harassment

Plaintiff alleges that, throughout the entirety of her supervision of him, Defendant DeCapua verbally harassed him by, for example, "mocking," "scoff[ing]" at, "badger[ing]," "accus[ing]," "laugh[ing] at," "belittling," and "down talk[ing]" him. ECF No. 9 at 2–5. This has resulted in Plaintiff feeling uncomfortable; he also implies that Defendant's conduct exacerbated the symptoms of his already-diagnosed post-traumatic stress disorder. *Id*. at 4–5. Plaintiff also alleges that Defendant discarded Plaintiff's electric wheelchair without contacting his family members or Veterans Affairs and had him removed from his group without a compelling reason.[4] *Id.* at 4.

Considering Plaintiff's status as a probationer at the time of the relevant events, the Court must identify the appropriate framework for his claims. "[A]n individual who is not 'in custody,' including a probationer or parolee, cannot state an Eighth Amendment claim of deliberate indifference." *Schlosser v. Elzea*, No. 3:19-CV-1380 (SRU), 2020 WL 887752, at *5 (D. Conn. Feb. 24, 2020) (citing cases). As a probationer when the alleged events occurred, however, Plaintiff can bring a deliberate indifference claim through the Fourteenth Amendment. *Id*.

But under both the Eighth and the Fourteenth Amendments, threats and verbal harassment, absent more, do not rise to the level of a constitutional violation. *See Cole v. Fischer*, 379 F. App'x. 40, 43 (2d Cir. 2010) ("Verbal harassment, standing alone, does not amount to a constitutional deprivation."); *Cuoco v. Moritsugu,* 222 F.3d 99, 109 (2d Cir. 2000) (holding that

---

[4] As pleaded, it is not clear if Plaintiff is alleging that his removal from group was the basis for his arrest or if this group was part of his court-ordered medical treatment. Because Plaintiff has not alleged additional information about this group, the Court considers this allegation in the context of his harassment claim, rather than as a separate claim.

"rudeness and name-calling does not rise to the level of a constitutional violation"); *Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986) (same); *Meizies v. McDonald*, No. 3:21-CV-1041 (KAD), 2021 WL 3914137, at *3 (D. Conn. Sept. 1, 2021) ("[A]llegations of verbal abuse or threats, unaccompanied by injury or damage, are not cognizable under section 1983, regardless whether the inmate is a pretrial detainee or sentenced prisoner." (quoting *Ruffino v. Murphy*, No. 3:09-CV-1287 (VLB), 2010 WL 1444562, at *4 (D. Conn. Apr. 12, 2010))). That said, some courts have held that where verbal harassment caused psychological injury "as a form of punishment," that may constitute a violation of the Fourteenth Amendment. *See, e.g.*, *Ruffino*, 2010 WL 1444562, at *4 (citing cases) (holding that the plaintiff "specifically alleges that the defendants' verbal harassment resulted in mental stress, worry, discomfort and emotional harm, and caused him to fear going to court," and those "allegations of injury resulting from the purported verbal harassment are sufficient to support a claim that [the plaintiff] was harassed by the defendants as a form of punishment").

In his amended complaint, Plaintiff alleges that Defendant verbally harassed him and subjected him to an "eye detect" test. ECF No. 9 at 2–5. Although he alleged that he has suffered some mental anguish, these allegations do not themselves suggest that the harassment was "a form of punishment." *Id*.; *Ruffino*, 2010 WL 1444562, at *4. However, Plaintiff has also alleged that Defendant intentionally discarded his electric wheelchair after his arrest and had him removed from his group without reason, which, at the initial review stage, adequately shows cognizable injury to sustain a harassment claim under the Fourteenth Amendment. ECF No. 9 at 4.

Therefore, at this early stage in the litigation, Plaintiff's allegations of Defendant's verbal harassment paired with his allegations that Defendant intentionally discarded his electric wheelchair and had him removed from group are sufficient to state a cognizable section 1983 claim

5

under the Fourteenth Amendment. 28 U.S.C. § 1915A(b)(1).

    B. HIPAA

Next, Plaintiff submits that Defendant "has repeatedly violated" his HIPAA privacy rights. ECF No. 9 at 3.

The Second Circuit has held that HIPAA neither expressly creates nor implies "a private cause of action for individuals to enforce" its prohibition on disclosing "medical records without a patient's consent." *See Meadows v. United Servs., Inc.*, 963 F.3d 240, 244 (2d Cir. 2020). Because there is no private cause of action under HIPAA, Plaintiff's HIPAA claim is dismissed. *See id.* (affirming dismissal of the plaintiff's claim under HIPAA because no private cause of action exists).

    C. Fourteenth Amendment Right to Privacy

Although there is no private cause of action under HIPAA, courts have construed such claims as Fourteenth Amendment right to privacy claims. *See, e.g.*, *Roman v. Quiros*, No. 3:22-CV-911 (SVN), 2023 WL 3158980, at *8 (D. Conn. Apr. 28, 2023); *Koram v. CT Dept of Corr.*, No. 3:23-CV-729 (KAD), 2023 WL 8653979, at *9 (D. Conn. Dec. 14, 2023). The Second Circuit has recognized a constitutional right to privacy in personal information—including "information about the state of one's health"—under the Fourteenth Amendment's Due Process Clause. *See Doe v. City of New York*, 15 F.3d 264, 267 (2d Cir. 1994); *see also Matson v. Bd. of Educ. of City Sch. Dist. of New York*, 631 F.3d 57, 63–64 (2d Cir. 2011); *Hancock v. Cty. of Rensselaer*, 882 F.3d 58, 65 (2d Cir. 2018) ("The Fourteenth Amendment's due process clause thus protects individuals in this circuit from arbitrary intrusions into their medical records."). On a case-by-case basis, this constitutional right to privacy has been extended, with limited extent, to prisoners. *See Hancock*, 882 F.3d at 66, 68.

A prisoner's right to confidentiality, however, is not absolute, and instead depends to some degree on the underlying condition. *See Matson*, 631 F.3d at 64 ("[T]he interest in the privacy of medical information will vary with the condition."). "Medical conditions entitled to confidentiality are those that are 'excruciatingly private and intimate' and 'likely to provoke both an intense desire to preserve one's medical confidentiality, as well as hostility and intolerance from others.'" *Koram*, 2023 WL 8653979, at *9 (quoting *Swinson v. City of New York*, 2022 WL 142407, at *7 (S.D.N.Y. Jan. 14, 2022)). Identifying the "strength of the individual interest in privacy never ends the analysis," though, as even "the weakest privacy interests cannot be overridden by totally arbitrary or outright malicious government action." *Hancock*, 882 F.3d at 68; *see id.* at 67 ("The strength of a privacy interest is relevant to the due process inquiry, but only in service of determining how strong the government's interest must be in order to override it."). In the context of disclosure of confidential medical information, if such disclosure is not reasonably related to a legitimate penological interest, it may violate the inmate's constitutional right to privacy if the government's behavior was so "arbitrary" as to "shock the conscience." *Id.* at 66, 66 n.3; *see also Powell*, 175 F.3d at 112.

Here, Plaintiff alleges that that Defendant intentionally revealed his medical information—specifically related to his mobility—to third parties during his group sessions. *See* ECF No. 9 at 3. He alleges that she did so both to his clinicians[5] and within earshot of other members of his group. *Id*. Because Plaintiff has at least some interest in his medical privacy, and because Plaintiff's amended complaint sufficiently alleges, for purposes of initial review, that Defendant intentionally disclosed his medical information to a third party, the Court will allow Plaintiff's Fourteenth Amendment substantive due process claim based on an invasion of medical privacy to

---

[5] It is not clear from Plaintiff's amended complaint whether the clinicians as medical providers already had access to this information.

proceed.

### D. Defamation/Slander

On this same basis, Plaintiff also raises a state law claim of defamation and, more particularly, slander. He again points to Defendant's statement "broadcast[ing]" that Plaintiff is lying about needing a wheelchair, and he reiterates that Defendant told two clinicians "loud enough for the whole group to hear" that Plaintiff "can walk and uses [the wheelchair] as an excuse." *Id.*

In any case in which a federal court has original jurisdiction, it has supplemental jurisdiction over "all other claims that are so related to claims in the action . . . that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Here, at this stage, this test is satisfied. As stated above, Plaintiff has properly pleaded, for initial review purposes, claims arising under the federal constitution, and Plaintiff's defamation claim is sufficiently related to those claims so as to be considered part of the same case or controversy under Article III. Accordingly, the Court assumes, for initial review purposes, that supplemental jurisdiction exists, and moves to screening the merits of the state law slander claim.

On the merits, "[d]efamation is comprised of the torts of libel and slander," with slander being "oral defamation." *Gambardella v. Apple Health Care, Inc.*, 86 Conn. App. 842, 850 (2005) (citation and internal quotation marks omitted). "A defamatory statement is defined as a communication that tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Cweklinsky v. Mobil Chem. Co.,* 267 Conn. 210, 217 (2004).

In Connecticut, "to establish a prima facie case of defamation, the plaintiff must demonstrate that: (1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to

a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement." *Gleason v. Smolinski*, 319 Conn. 394, 430 (2015) (citation, internal quotation marks, alteration, and footnote omitted).

Here, for initial review purposes, Plaintiff has pleaded allegations sufficient to support his slander claim under Connecticut law. *See id.* Plaintiff alleges that Defendant falsely claimed that Plaintiff lied about needing a wheelchair, and Defendant did so to third parties. *Id.* Interpreting Plaintiff's pleading liberally, the Court infers that his reputation suffered as a result of Defendant's statement, particularly among the members of his former group. *Id.* Thus, Plaintiff's state law defamation/slander claim may proceed.

E. Relief Sought

Having reviewed the substance of Plaintiff's claims, the Court now evaluates the relief that Plaintiff seeks from Defendant, which includes both compensation and injunctive relief in the form of Defendant's termination.

    1. *Damages*

On damages, the Eleventh Amendment bars Plaintiff from suing state actors in their official capacities for monetary damages. *See, e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Plaintiff may thus only seek monetary damages from Defendant in her individual capacity.

    2. *Injunctive Relief*

In addition to seeking damages, Plaintiff also requests injunctive relief in the form of an order terminating Defendant's employment with the state.

A plaintiff may not seek injunctive relief against a state official in their individual capacity because, in that form, a defendant would be unable to provide the injunctive relief sought. *See Kuck v. Danaher*, 822 F. Supp. 2d 109, 143 (D. Conn. 2011). And a plaintiff may only proceed to

injunctive relief against a defendant in their official capacity to the extent that plaintiff alleges an ongoing constitutional violation. *See Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 254–55 (2011) (citing *Ex parte Young*, 209 U.S. 123 (1908)). Federal courts can order prospective relief "in any civil action with respect to prison conditions," provided it "extend[s] no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs." 18 U.S.C. § 3626(a)(1)(A). Injunctive relief must be narrowly tailored and proportional to the scope of the violation, and it must extend no further than necessary to remedy the violation. *Brown v. Plata*, 563 U.S. 493, 531 (2011).

Here, Plaintiff's allegations describe only alleged constitutional violations that occurred in the past, and do not suggest that he is subject to any ongoing constitutional violation. *See In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007). Moreover, Plaintiff's request that Defendant be terminated from employment is overbroad, in relation to the alleged violation. Thus, Plaintiff's request for official capacity injunctive relief must be dismissed.

**ORDERS**

**For the foregoing reasons, the Court enters the following orders:**

Plaintiff may proceed with the following claims against Defendant for damages in her individual capacity:

(1) a Fourteenth Amendment violation for verbal harassment of Plaintiff ;

(2) a Fourteenth Amendment violation of Plaintiff's right to medical privacy; and

(3) a defamation/slander claim under Connecticut state law.

All other claims, including official capacity claims, are DISMISSED without prejudice.

**Plaintiff has two options as to how to proceed in response to this Initial Review Order:**

(1) If Plaintiff wishes to proceed immediately **only** on the claims set forth above against Defendant DeCapua, he may do so without further delay.  If Plaintiff selects this option, he shall file a notice on the docket on or before **June 30, 2025**, informing the Court that he elects to proceed with service as to the claims set forth in this paragraph.  After Plaintiff files this notice, the Court will begin the effort to serve process on Defendant DeCapua in her individual capacity as described above.

(2) Alternatively, if Plaintiff wishes to attempt to replead any of the claims asserted in his complaint that have been dismissed in order to attempt to state a viable claim, he may file an amended complaint by **June 30, 2025.  An amended complaint, if filed, will completely replace the complaint, and the Court will not consider any allegations made in the original complaint in evaluating any amended complaint.**  The Court will review any amended complaint after filing to determine whether it may proceed to service of process on any defendants named therein.  If Plaintiff elects to file an amended complaint, the complaint this Initial Review Order addresses will not proceed to service of process on Defendant.  If the Court receives no response from Plaintiff by **June 30, 2025**, the Court will presume that Plaintiff wishes to proceed on the complaint as to the claims permitted to go forward in this Initial Review Order, and Plaintiff will have to show good cause if he seeks to amend the complaint in any manner in the future.

**Changes of Address**.  If Plaintiff changes his address at any time during the litigation of this case, Plaintiff **MUST** notify the Court.  *See* D. Conn. L. Civ. R. 83.1(d)(1) ("Any self-represented party must provide an address where service can be made upon such party.").  Failure to do so can result in the dismissal of the case.  Plaintiff must give notice of a new address even if he is incarcerated.  Plaintiff should write "PLEASE NOTE MY NEW ADDRESS" on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.

If Plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address. Plaintiff should also notify Defendant or counsel for Defendant of his new address, as appropriate.

**SO ORDERED** at Hartford, Connecticut, this 29th day of May, 2025.

    */s/ Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE